1    WO

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                      FOR THE DISTRICT OF ARIZONA

8

9    Luis A. Lopez,                    )
                                       )              CV-11-615-TUC-JGZ
10          Plaintiff,                 )
                                       )              **ORDER**
11   vs.                               )
                                       )
12                                     )
     Cardiosom, LLC, an Arizona foreign)
13   limited liability company; Dormir,)
     Inc., an Indiana corporation; John)
14   and Jane Does 1-10, inclusive; and)
     XYZ Partnerships, 1-10, inclusive.)
15                                     )
            Defendants.                )
16                                     )
                                       )
17   _____ )

18          Pending before the Court is Plaintiff's Second Amended Application for Default

19   Judgment.   (Doc. 32.)   For the following reasons, Plaintiff's Application for Default

20   Judgment is granted.

21                    **FACTUAL AND PROCEDURAL BACKGROUND**

22          This action involves a dispute between Plaintiff Luis Lopez and Defendants

23   Cardiosom, LLC and Dormir, Inc.[1] over Defendants' failure to compensate Lopez according

24

25          [1]The pleadings do not explain the relationship between Defendants Cardiosom and Dormir;
26   however, it appears undisputed that each Defendant was in an employment relationship with
     Plaintiff.  The offer of employment refers to Cardiosom and Dormir interchangeably: "CardioSom
27   LLC/Dormir LLC."  (Doc. 29-3.) Both Cardiosom and Dormir removed this action from Pima
     County Superior Court to this Court.  (Doc. 1.)  Cardiosom and Dormir also filed an Answer
28   referring to themselves as "collectively Defendants."  (Doc. 6.)

1    to the commission schedule in his employment agreement.  (Complaint, Doc. 1-3 at pg. 2.)
2    Defendants removed this matter from Pima County Superior Court (Doc. 1) and filed an
3    Answer on October 4, 2011.  (Doc. 6.)  On November 29, 2011, a Scheduling Conference
4    was held in this matter.  (Doc. 14.)  Defendants appeared at the Scheduling Conference
5    through counsel. On February 22, 2012, the Court granted Defendants' counsel's Application
6    for Leave to Withdraw and ordered Defendants to notify the Court within 20 days that new
7    counsel has been retained to defend this matter.  (Doc. 21.)  Defendants failed to do so.
8    Consistent with the Scheduling Order, Plaintiff attempted to conduct discovery; however,
9    Defendants failed to respond to Plaintiff's requests for production dated November 29, 2011
10   and February 2, 2012.  Plaintiff also scheduled a Rule 30(b)(6) deposition for February 29,
11   2012, which Defendants failed to attend.

12   Plaintiff moved for an order to compel discovery or alternatively to impose sanctions.
13   (Doc. 23.)  The Court set a hearing on Plaintiff's Motion to Compel.  (Doc. 25.)  In that
14   Order, the Court stated that "Defendants shall appear, represented by counsel, prepared to
15   defend the matter.  Defendants are admonished that failure to comply with the Court's orders
16   will result in the imposition of sanctions, including default."  (Doc. 25.)  Defendants failed
17   to appear at the hearing.  Based on Defendants' failure to defend this action, the Court
18   ordered that Defendants' Answer to the Complaint be stricken, that the Clerk of the Court
19   enter default against Defendants, and that Plaintiff submit an application for default
20   judgment.  (Doc. 27.)  Plaintiff was also ordered to serve written notice of application for
21   default judgment upon Defendants at least seven days prior to the hearing.  (Doc. 27.)  On
22   May 2, 2012, the Clerk entered default against Defendants.  (Doc. 28.)

23   On May 24, 2012, the Court held a hearing concerning entry of default judgment and
24   proof of damages.  Lopez testified in support of his claim for damages.  In addition, the
25   following documents were admitted into evidence: an e-mail to Lopez, dated April 26, 2011,
26   from Dormir's president, Jay Jarrell; Letter Offer of Employment dated January 4, 2007, and
27   attached Commission Schedule; and Defendants' Annual Income Statements from 2008
28   through the first quarter of 2011.   The evidence showed that Lopez was hired by

1  Cardiosom/Dormir in February of 2007 and that he resigned his employment in July of 2011.

2  Pursuant to the contract between Lopez and Defendants, Lopez was to receive a yearly salary

3  of $64,000, plus bonuses calculated at 7.5% of the net income of the Tucson office.[2]  Lopez

4  testified that he was paid his yearly salary in accordance with the contract, but Defendants

5  failed to pay Lopez his final commission of $4,000.  (*See also* Complaint, Doc. 1-3 at pg. 3.)

6  Defendants also failed to compensate Lopez for bonuses.  In the e-mail dated April 6, 2011,

7  Jay Jarrell, the President of Dormir, acknowledged that Lopez was owed $60,224 in unpaid

8  bonuses.  (Doc. 29-2.)  His e-mail states:

9      Luis,

10      I'm looking forward to meeting you.  I also am aware of the
11      prior special bonus program issue.  I am sorry it has taken so
    long for Dormir to resolve, but we have done so.  Paula, our
12      CFO, finally was able to review all the support we could find,
    and we have calculated the bonus under this special prior plan
13      that relates to your years at Tucson through March 2010 to be
    $60,224.  Let's find some time Thursday for the two of us to
14      discuss.

15      I hope you understand that no one at the Company was trying to
    avoid paying what was owed and due to you.  The prior
16      management simply did not document anything formally and
    never communicated anything at Corporate.  Therefore, we were
17      faced with documenting support for the calculation.  Again, I am
    sorry it took so long.

18      Jay A. Jarrell
    President
19      Dormir, Inc.

20  (*Id.*)  Subsequent to the e-mail, Cardiosom paid Lopez $30,075.  (Affidavit of Luis Lopez,

21  Doc. 32-1.)

22      In his Second Amended Application for Default Judgment, Plaintiff requests that the

23  Court enter judgment in his favor and award him unpaid bonuses in the amount of

24  $127,245.33, his unpaid commission in the amount of $4,000, and that the Court treble the

25

26      [2]Lopez testified at the evidentiary hearing that his contract provided for bonuses equal to
27  4.5% of the Tucson office's net income.  In fact, the contract states that Lopez is entitled to 7.5%
of net income earned by the Tucson office.  (*See* Doc. 29-3.)  Lopez submitted an affidavit
28  correcting his testimony.  (Doc. 32-1.)

1   damages pursuant to A.R.S. § 23-355(A), on account of Defendants' failure to compensate

2   him pursuant to the terms of the contract.

3   **DISCUSSION**

4   **A.  Default Judgment**

5   The entry of default by the Clerk is a necessary prerequisite to an entry of default

6   judgment. *Vongrabe v. Sprint PCS*, 312 F.Supp.2d 1313, 1318 (S.D.Cal. 2004).  The Clerk

7   has properly entered default against Defendants. (Doc. 28.) After entry of a default, a court

8   may grant a default judgment on the merits of the case.  *See* Fed.R.Civ.P. 55. "The district

9   court's decision whether to enter a default judgment is a discretionary one."  *Aldabe v.*

10  *Aldabe,* 616 F.2d 1089, 1092 (9th Cir.1980).  Factors that a court may consider in exercising

11  its discretion include:

12  > (1) the possibility of prejudice to the plaintiff; (2) the merits of
    > plaintiff's substantive claim; (3) the sufficiency of the complaint;
13  > (4) the sum of money at stake in the action; (5) the possibility of
    > a dispute concerning material facts; (6) whether the default was
14  > due to excusable neglect; and (7) the strong policy underlying
    > the Federal Rules of Civil Procedure favoring decisions on the
15  > merits.

16  *Eitel v. McCool,* 782 F.2d 1470, 1471-72 (9th Cir. 1986).  As default has been entered, the

17  Court may take as true all factual allegations in Plaintiff's Complaint except for those related

18  to the amount of damages.  *See TeleVideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 917-18 (9th

19  Cir. 1987).

20  In considering the *Eitel* factors, the Court concludes that entering  default judgment

21  against Defendants Cardiosom and Dormir is appropriate.

22  **1.  The possibility of prejudice to Lopez**

23  Jay Jarrell's e-mail acknowledges that Lopez is owed payments earned while

24  employed as a sales representative for Defendants. Lopez would suffer prejudice if his

25  motion for default judgment were denied because he would be "without other recourse for

26  recovery." *PepsiCo, Inc. v. California Security Cans,* 238 F.Supp.2d 1172, 1177 (C.D.Cal.

27  2002). This factor greatly weighs in favor of entering default judgment.

28

**2.  Merits of the Substantive Claim & Sufficiency of the Complaint**

*Eitel* "require[s] that a plaintiff state a claim on which the [plaintiff] may recover." *Philip Morris U.S.A., Inc. v. Castworld Products, Inc.,* 219 F.R.D. 494, 499 (C.D.Cal. 2003) (internal quotation marks omitted).  Plaintiff's Complaint is grounded in a claim for breach of contract.  The elements of a breach of contract claim are (1) a contract, (2) breach of the contract, and (3) resulting damages.  *Chartone, Inc. v. Bernini,* 83 P.3d 1103, 1111 (Ariz. App. 2004).  Lopez presented evidence demonstrating the existence of a contract with Defendants, Defendants' breach of the contract, and Lopez's resulting damages.  Again, Jay Jarrell's e-mail acknowledges that as of  April of 2011, Defendants owed Lopez $60,224.00 in overdue bonuses.  Lopez has stated a claim for breach of contract.

**3.  Sum at Stake**

This factor requires the Court to consider the amount of money at stake in relation to the seriousness of defendants' conduct.  *Eitel*, 782 F.2d at 1471-72.  Here Defendants have failed to pay Lopez  monies he  earned despite the company's acknowledgment that the monies are owed.  The amount of money at stake is substantial; Lopez requests payment for bonuses and commission that he earned, but did not receive, the total amount of which exceed his annual salary, and that the total amount be trebled pursuant to A.R.S. § 23-355(A).  Lopez's request is grounded in the contract and supported by law.  This factor weighs in favor of default judgment.

**4.  Possible Dispute Concerning Material Facts**

In light of Jay Jarrell's email acknowledging Defendants' non-payment, the Court finds that there is little possibility of dispute concerning the material fact that Defendants owe Lopez for outstanding commissions. In addition, on entry of default, the court may accept as true all well-pleaded facts in the complaint, except those relating to damages, and any later provided evidence in the form of affidavits and exhibits. *See TeleVideo Sys., Inc.*, 826 F.2d at 917-18.  Lopez's Complaint and testimony establish Defendants' breach of the employment agreement.    The Court accepts Plaintiff's averments as true.  Moreover,

1   Defendants' answer has been stricken; and Defendants have failed to appear since counsel

2   withdrew. Thus, this factor also weighs in favor of default judgment.

3       **5. Excusable Neglect**

4       Usually, a court will ask whether a defendant's failure to answer is due to excusable

5   neglect. *See Eitel,* 782 F.2d at 1472 (noting that the fact that the parties were engaged in

6   settlement negotiations excused defendant from failing to answer).  In the instant case,

7   Defendants were properly served, they answered the complaint, and they appeared at the case

8   management conference through counsel.  Given these circumstances, it is unlikely that

9   Defendants' failure to defend this matter was a result of excusable neglect. *See Shanghai*

10  *Automation Instrument Co., Ltd. v. Kuei,* 194 F.Supp.2d 995, 1005 (N.D.Cal. 2001) (finding

11  no excusable neglect where defendants "were properly served with the Complaint, the notice

12  of entry of default, as well as the papers in support of the instant motion").

13      **6. Strong Policy Favoring Decisions on the Merits**

14      Generally, default judgments are disfavored because "cases should be decided upon

15  their merits whenever reasonably possible." *Eitel,* 782 F.2d at 1472.  However, because a

16  discretionary standard is applied, "default judgments are more often granted than denied."

17  *PepsiCo v. Triunfo-Mex, Inc.,* 189 F.R.D. 431, 432 (C.D.Cal. 1999).  Indeed, the mere

18  existence of Fed. R. Civ. P. 55(b) indicates that the seventh *Eitel* factor is not dispositive.

19  *California Security Cans,* 238 F.Supp.2d at 1177.  Here, Defendants' failure to defend this

20  matter makes a decision on the merits impractical, if not impossible.   The e-mail

21  correspondence between Lopez and Jay Jarrell indicates that Lopez attempted to resolve this

22  matter with Defendants prior to the filing of this lawsuit.  Litigation followed and Defendants

23  have failed to respond to Lopez's discovery requests and this Court's orders.  Therefore, the

24  policy encouraging decisions of cases on their merits does not weigh against granting default

25  judgment here.

26

27

28

**B. Damages**

Having determined that entry of default judgment is proper, the Court now turns to the matter of damages.  "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed.R.Civ.P. 54(c).  Because the allegations in the complaint are taken as true "[i]njury is established and plaintiff need prove only that the compensation sought relates to the damages that naturally flow from the injuries pled."  *Black & Decker (U.S.), Inc. v. All Spares, Inc.*, 2010 WL 3034887, *3 (D.Ariz. Aug.3, 2010) (citing *Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 498 (C.D.Cal. 2003)). While the Court is not required to issue findings of fact as to liability, it must do so as to damages.  *Adriana Intern. Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990).

**1. Compensatory Damages**

Lopez has demonstrated that he is entitled to compensation from Defendants' breach of the employment agreement.  The employment agreement provides for an annual salary of $64,000 per year, plus commissions pursuant to the Commission Schedule attached to the agreement as Schedule "A".  The Commission Schedule provides:  "Employee will be paid 7.5% of the net income for the Tucson branch on top of other commissions." (Doc. 29-3, pg. 2.)  The contract specified that the bonus commission would  be paid out yearly for on-going operations and be paid in total if the Tucson branch or company was ever sold.  (*Id.*)

In proof of his damages, Plaintiff produced the annual net income statements for the Tucson branch for years 2008 through 2011. Plaintiff could not acquire an annual income statement for 2007, but Plaintiff stated in his affidavit that, to the best of his knowledge, the Tucson branch's net income in 2007 was approximately the same as in 2008.  (Doc. 32-1, p.1-2.)  The Court accepts Plaintiff's averment as reasonable. The Court notes that the average of  Defendants' annual net income for years 2008, 2009, 2010, and 2011 is $460,158.25, which is greater than the $449,028.00 Plaintiff seeks to utilize for 2007.[3]  *See*

---

[3]Plaintiff attempted to obtain the company's records through discovery.  Defendants' refusal to participate in discovery should not be to Plaintiff's detriment.

1  *Short v. Riley*, 724 P.2d 1252, 1255 (Ariz. App. 1986) ("In the case of an established

2  business, certainty may also be proved when the plaintiff presents some reasonable method

3  of computing his net profit or loss.")   Thus, the annual bonuses earned by Plaintiff during

4  his employment with Defendants are as follows:

| Year | Net Annual Income for Tucson Branch | 7.5% Bonus Earned |
|---|---|---|
| 2007 | $411, 609.00[4] | $30,870.67 |
| 2008 | $449,028.00 | $33,677.10 |
| 2009 | $443,804.00 | $33,285.30 |
| 2010 | $492, 081.00 | $36,906.08 |
| 2011 | $265,836.67[5] | $19,937.75 |
| **Totals:** | **$2,062,358.67** | **$154,676.90** |

Plaintiff testified that Defendants had paid him $30,075 of his bonuses, but had failed

to compensate him for his final commission in the amount of $4,000.  Thus, the total amount

of compensatory damages owed to Lopez is $128,601.90 as calculated below.

|  |  |
|---|---|
| Total Bonus Earned | $154,676.90 |
| Bonus Paid by Defendants | -   30,075.00 |
| Subtotal | $124,601.90 |
| Final Commission Owed | +   4,000.00 |
| **Total Amount Owed** | **$128,601.90** |

## 2.  Statutory Damages

Plaintiff further requests treble damages pursuant to A.R.S. § 23-355(A), which

provides "if an employer, in violation of this chapter, fails to pay wages due any employee,

the employee may recover in a civil action against an employer or former employer an

---

[4] The Court reduced the Net Annual Income for 2007 by 1/12th as Plaintiff commenced employment in February 2007.

[5] To determine Defendants' annual income for the seven months of Plaintiff's employment in 2011, the Court calculated the Defendants' average monthly net income as shown in Defendants' first quarterly net income statement for that year and multiplied it by seven.

amount that is treble the amount of the unpaid wages."   An employer is prohibited from withholding any portion of an employee's wages unless "there is a reasonable good faith dispute as to the amount of wages due . . . ."  A.R.S. § 23-352;  *Apache East, Inc. v. Wiegand*, 580 P.2d 769, 773 (Ariz. App. 1978).  This provision includes the failure to pay commissions and bonuses.  *Schade v. Diethrich*, 760 P.2d 1050, 1061 (Ariz. 1988).

Here, Dormir's president has admitted in an e-mail that bonus payments were owed to Lopez.  Defendants have failed to pay Plaintiff the full amount of bonuses due and owing. As Defendants' Answer has been stricken and they have failed to defend this matter, there is no evidence to support a finding that Defendants withheld Plaintiff's wages in good faith. Therefore, the Court concludes that Lopez is entitled to treble the amount of unpaid wages: $128,601.90 x 3 =  $385,805.70.

Accordingly, IT IS ORDERED:

1. Plaintiff's Second Amended Application for Default Judgment (Doc. 32) is GRANTED.

2. Damages are awarded in favor of Luis A. Lopez and against Cardiosom, LLC and Dormir, Inc., jointly and severally, in the amount of $385,805.70.

3. The Clerk of the Court shall enter judgment accordingly.

4. The Clerk of the Court shall mail a copy of this Order and a copy of the judgment to:

> Dormir, Inc., c/o Gregory J. Morical
> 615 W. Carmel Dr. Ste. 100
> Carmel, Indiana 46032

DATED this 13th day of July, 2012.

Jennifer G. Zipps
United States District Judge